**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (253265)
david@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, Arizona 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Ave, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID SWANN,** | **Case No.:** |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | |
| **EISENHOWER MEDICAL CENTER d/b/a EISENHOWER HEALTH AND PROFESSIONAL CREDIT SERVICE,** | **1. THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *ET SEQ.*; AND,** |
| Defendants. | **2. THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE § 1788, *ET SEQ.*** |
| | **JURY TRIAL DEMANDED** |

- 1 -
COMPLAINT

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has also determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

3. Plaintiff DAVID SWANN ("Plaintiff") through Plaintiff's attorneys, brings this lawsuit to challenge the illegal actions of defendants EISENHOWER MEDICAL CENTER d/b/a EISENHOWER HEALTH ("Eisenhower Health") and PROFESSIONAL CREDIT SERVICE ("PCS") (together, "Defendants") with regard to attempts by Defendants, who are each a debt collector, to unlawfully and abusively collect a debt not incurred or owed by Plaintiff.

4. Plaintiff makes these allegations on information and belief, with the exception of

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b).

1 those allegations that pertain to a Plaintiff, or to a Plaintiff's counsel, which

2 Plaintiff alleges on personal knowledge.

3 5. While many violations are described below with specificity, this Complaint

4 alleges violations of the statutes cited in their entirety.

5 6. Unless otherwise stated, Plaintiff alleges that any violations by Defendants were

6 knowing and intentional, and that Defendants did not maintain procedures

7 reasonably adapted to avoid any such violation.

8 7. Unless otherwise indicated, the use of any Defendants' name in this Complaint

9 includes all agents, employees, officers, members, directors, heirs, successors,

10 assigns, principals, trustees, sureties, subrogees, representatives, and insurers of

11 the Defendants named.

12 **JURISDICTION AND VENUE**

13 8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k)

14 and 28 U.S.C. § 1367 for supplemental state claims.

15 9. This action arises out of violations of: (i) the Fair Debt Collection Practices Act,

16 15 U.S.C. §§ 1692-1692(p) ("FDCPA"); and (ii) the Rosenthal Fair Debt

17 Collection Practices Act, Cal. Civ. Code § 1788.17, *et seq*. ("RFDCPA").

18 10. Because Defendants each conduct business within the State of California and in

19 the County of Riverside, personal jurisdiction is established.

20 11. Further, the events leading to Plaintiff's cause of action occurred in County of

21 Riverside and the State of California, and it is Plaintiff's understanding that

22 Defendant Eisenhower Health has its principal place of business in the County of

23 Riverside.

24 12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i)

25 Plaintiff resides in the County of Riverside, State of California, which is within

26 this judicial district; (ii) the conduct complained of herein occurred within this

27 judicial district; and (iii) Defendants conduct business within this judicial district

28 at all times relevant.

**PARTIES**

13. Plaintiff is a natural person who resides in the County of Riverside, State of California, from whom debt collectors sought to collect a consumer debt, which was alleged to be due and owing from Plaintiff.

14. Plaintiff is also, and at all times mentioned herein was, a "person" as defined by Cal. Civ. Code § 1788.2(g).

15. Plaintiff is also a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h). In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

16. Plaintiff is informed and believes, and thereon alleges, that Eisenhower Health is incorporated in the State of California, with its principal place of business located at 39000 Bob Hope Drive, Rancho Mirage, California 92270. Plaintiff is further informed that Eisenhower Health has several hospitals and/or medical facilities located throughout Palm Springs, California.

17. Plaintiff is informed and believes, and thereon alleges, that Eisenhower Health, in the ordinary course of business, regularly, on behalf of themselves, engages in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

18. Eisenhower Health is, and at all times mentioned herein was, a "person" as defined by Cal. Civ. Code § 1788.2(g).

19. Plaintiff is informed and believes, and thereon alleges, that PCS is a corporation formed within the State of Oregon, with its principal place of business located at 400 International Way, Springfield, Oregon 97477.

20. Plaintiff is further informed and believes, and thereon alleges, that PCS, in the ordinary course of business, regularly, on behalf of others, engages in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code §

1788.2(c). PCS also is believed to use "instrumentality of interstate commerce or the mails in any business" where "the principal purpose of which is the collection of any debts" and "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" and is therefore a "debt collector" as that term is defined by 15 U.S.C § 1692a(6).

21. PCS is, and at all times mentioned herein was, a "person" as defined by Cal. Civ. Code § 1788.2(g).

22. This case involves money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f). As well as arising out of a "debt" as that term is defined by 15 U.S.C. 1692a(5).

## FACTUAL ALLEGATIONS

23. At all times relevant, Plaintiff is an individual residing within the State of California.

24. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted business in the State of California, including within the County of Riverside.

25. Sometime during the beginning of 2023, Plaintiff was shocked to receive a written communication, in an attempt to collect an alleged debt, from Eisenhower Health.

26. Said communication from Eisenhower Health indicated that Plaintiff allegedly owed $5,289.60 to Eisenhower Health for hospital charges incurred on or around October 11, 2021 (the "Alleged Debt").

27. Upon reviewing this communication from Eisenhower Health, it was abundantly clear to Plaintiff that the Alleged Debt did not belong to him and that this was a case of mistaken identity.

28. At no point in time, including during October of 2021, did Plaintiff *ever* seek medical services at *any* Eisenhower Health location.

29. In fact, at all times relevant, Plaintiff resided and continues to reside in Lake Elsinore, which is approximately 70 miles from Palm Springs.

30. Plaintiff also has full medical insurance coverage.

31. Prior to receiving this communication in early 2023, Plaintiff had not received any communications (in any manner) from Eisenhower Health and was completely unaware of the Alleged Debt, as it does not belong to Plaintiff.

32. Upon being made aware of the Alleged Debt, Plaintiff immediately contacted Eisenhower Health to dispute that debt (as Plaintiff reasonably believed that someone else with the same or similar name might have incurred the Alleged Debt).

33. Indeed, sometime approximately during February or March of 2023, Plaintiff called Eisenhower Health and explained that the Alleged Debt did not belong to him.

34. Plaintiff also provided Eisenhower Health with his middle name and social security number so that Eisenhower Health could cross-reference that information with its records to determine the true owner of the Alleged Debt.

35. Plaintiff also informed Eisenhower Health that he had never received medical treatment at any hospital in the Palm Springs area.

36. During that call, the agent for Eisenhower Health lead Plaintiff to believe that Eisenhower Health would resolve the mistake.

37. However, following that call, Plaintiff received a letter dated March 7, 2023 from Eisenhower Health indicating that Plaintiff had until April 4, 2023 to pay the Alleged Debt in full to Eisenhower Health. Plaintiff was frustrated that he was continuing to be contacted regarding a debt that did not belong to him.

38. Shortly thereafter, Plaintiff received yet another written communication from Eisenhower Health (in an attempt to collect on the Alleged Debt) dated March 9, 2023.

39. This March 9, 2023 communication stated, in part, "You are receiving this letter

as our records indicate you have an outstanding balance with Eisenhower Health."
The letter further stated: "Any balances aged 181 days or greater will be
outsourced to Professional Credit Service . . . for further collections."

40. Frustrated by Eisenhower Health's continued contact, Plaintiff sent a written
communication in or around April of 2023 to Eisenhower Health, again, disputing
that the Alleged Debt belonged to him.

41. Plaintiff then received a written communication dated April 19, 2023 from
Eisenhower Health indicating:

> We thank you for [your] letter addressed to Martin Massiello,
> where you explained your concerns in regards to your billing
> experience with Eisenhower Health. We apologize that the
> expectations were not met . . . an investigation into your
> concerns was opened and included a review of the medical
> record . . .It is my understanding that the Financial Service
> Department has been working with you. . .As we believe we
> have addressed your concerns, we will be closing the matter.

42. Upon reviewing this April 19, 2023 letter from Eisenhower Health, Plaintiff
believed that the matter had been resolved and that Eisenhower Health would
cease to continue to hold Plaintiff liable for a debt he did not incur.

43. However, despite Plaintiff's repeated attempts to resolve these issues, upon
information and belief, Eisenhower Health transferred the Alleged Debt to
Professional Credit Service for continued collection.

44. On or about August 28, 2023, Plaintiff received a debt collection letter from PCS,
in an attempt to collect the Alleged Debt, via a written communication dated
August 18, 2023.

45. The August 18, 2023 letter stated, "Professional Credit Service is a debt collector,
We are trying to collect a debt that you owe EISENHOWER MEDICAL
CENTER."

46. Plaintiff was again shocked, frustrated and annoyed upon receiving this August
18, 2023 letter as it was clear that Defendants were still actively pursuing Plaintiff

for the Alleged Debt despite his good faith efforts to resolve this matter.

47. On or about August 28, 2023, Plaintiff once more, mailed out letters to the CEO Marin Massiello of Eisenhower Health, and also included PCS' CEO, Scott Purcell, and Attorney General of California, Rob Bonta as well as Governor Newsom requesting communication cease on the Alleged Debt.

48. On August 29, 2023, Plaintiff also sent PCS (via U.S. Mail and email) a written dispute and request to cease and desist direct communications with Plaintiff. The letter also expressly advised PCS that Plaintiff disputed the Alleged Debt and requested all documents pertaining to such debt, including account statements, transactions, original creditor's information, subsequent assignments to any debt collectors and its predecessor no later than September 13, 2023.

49. PCS confirmed receipt of the August 29, 2023 letter, via email, on August 29, 2023 at approximately 1:54 p.m.

50. As of the date of the filing of this Complaint, Plaintiff has not received the requested documents verifying the Alleged Debt from PCS.

51. Despite Plaintiff's numerous attempts to resolve this situation, Defendants continue to collect on the Alleged Debt. In fact, upon information and belief, Defendants' unlawful collection activities are ongoing and continuing to the present day as Defendants are continuing to hold Plaintiff liable for a debt that he did not incur.

52. Through this conduct, Defendants violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of the Alleged Debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

53. Through this conduct, Defendants also violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the debt in connection with the collection of the Alleged Debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal.

1  Civ. Code § 1788.17.

2  54. Through this conduct, Defendants violated 15 U.S.C. § 1692e(10) by using false

3  representations and deceptive means to collect the Alleged Debt. This section is

4  incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant

5  violated Cal. Civ. Code § 1788.17.

6  55. Through this conduct, Defendants also violated 15 U.S.C. § 1692f by using unfair

7  and unconscionable means to collect the Alleged Debt. This section is

8  incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant

9  violated Cal. Civ. Code § 1788.17.

10  56. Through this conduct, Defendants violated 15 U.S.C. § 1692f(1) by collecting an

11  amount not expressly authorized by the agreement creating the debt or permitted

12  by law. This section is incorporated into the RFDCPA through Cal. Civ. Code §

13  1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

14  57. Despite Plaintiff's repeated attempts to resolve this matter, Defendants continue

15  to hold Plaintiff accountable for the Alleged Debt causing Plaintiff to suffer actual

16  damages, including emotional distress, which are ongoing.

17  58. As a direct result of Defendants' illegal actions, Plaintiff has suffered actual

18  damages and out-of-pocket loss, including, loss of productive time, charges for

19  telephone usage, postage costs, and attorneys' fees and costs.

20  59. As a direct result of Defendants' illegal actions, Plaintiff has also suffered personal

21  embarrassment, feelings of fear, anxiety, hopelessness, anger, persecution,

22  emotional distress, frustration, and other negative and upsetting emotions, which

23  continue until the present day as Plaintiff is still being held liable for a debt that

24  he did not incur.

25  60. Plaintiff also faces the immediate threat of being held liable and having to pay a

26  debt that he did not incur.

27  61. Defendants' violations alleged herein were willful and knowing as Defendants

28  possess all the information required to confirm that the Alleged Debt did not

belong to Plaintiff (including his full legal name and social security number), yet Defendants intentionally disregarded such information and continued to collect on the Alleged Debt despite being on notice that it did not belong to Plaintiff.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692-1692(p) (FDCPA)
### [AGAINST DEFENDANT PROFESSIONAL CREDIT SERVICE ONLY]

62. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

64. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

### COUNT II
### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
### CAL. CIV. CODE §§ 1788-1788.32 (RFDCPA)
### [AGAINST BOTH DEFENDANTS]

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66. The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

67. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a

knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each Defendant individually.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

- An award of actual damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a), against each named Defendant individually;
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against each named Defendant individually;
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c) and 15 U.S.C. § 1692k(a)(3), against each named Defendant individually;
- Any and all other relief that this Court deems just and proper.

## TRIAL BY JURY

68. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 21, 2023                    Respectfully submitted,

                                             **KAZEROUNI LAW GROUP, APC**

                                             By: /s/ *David J. McGlothlin, Esq*
                                             DAVID J. MCGLOTHLIN, ESQ.
                                             PAMELA E. PRESCOTT, ESQ.
                                             ATTORNEYS FOR PLAINTIFF